```
                    UNITED STATES DISTRICT COURT
                    EASTERN DISTRICT OF MISSOURI
                        SOUTHEASTERN DIVISION
```

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
|       Plaintiff, | ) |
| | ) |
|   v. | )    No. 1:05 CR 35 CDP |
| | )                   DDN |
| KEVIN D. OTTERSON, | ) |
| | ) |
| | ) |
|       Defendant. | ) |

## ORDER AND RECOMMENDATION
## OF UNITED STATES MAGISTRATE JUDGE

    This action is before the Court upon the pretrial motions of the parties which were referred to the undersigned United States Magistrate Judge pursuant to 28 U.S.C. § 636(b). An evidentiary hearing was held on September 1, 2005.

    Defendant Kevin D. Otterson has moved to suppress evidence and statements (Doc. 40). From the evidence adduced at the hearing, the undersigned makes the following findings of fact and conclusions of law:

### FACTS

    1.   In December 2004, United States Postal Inspector Frank Graham received information from Postal Inspector Dianne Petry in Indianapolis regarding her investigation of Kevin Otterson being involved in the interstate transportation of child pornography. Inspector Petry told Inspector Graham that she had conducted an undercover investigation by portraying herself in internet chatrooms as a minor female interested in pornographic contraband. After communications between them, which included pornographic images of himself, Otterson transmitted to her over the internet digital images of child pornography.

    2.   On January 11, 2005, Inspector Graham sought a search warrant from Magistrate Judge Lewis Blanton for Otterson's residence at 115 N. Fountain Street, Apartment 207, Cape Girardeau, Missouri, to search for several categories of evidence of unlawful interstate transportation of child pornography. In support of the application, Inspector Graham

submitted his written, sworn affidavit. In the affidavit, Graham described his extensive training and experience in investigating the sexual exploitation of minors. He described the information provided by Inspector Petry. On October 14, 2004, Petry logged onto the internet with a surreptitious name and description of herself as a minor female. While in a sexually oriented chatroom, she received an instant message from someone using a computer and the name "candyman539" who asked for more information about her. She used her computer to provide him the information he sought, falsely describing herself. The affidavit described the sexual content of instant message communications which were exchanged between Petry and candyman539 on October 15, October 22, October 25, October 26, November 5, November 23, and December 23, 2004. In the December 23 digital communication, Candyman539 sent Petry a video web camera recording of himself performing sexual activity. Also displayed in the video from Candyman539 was a computer monitor on which were displayed graphic images of minor females engaged in sexual activity. The affidavit also described the December 27, 2004 investigation by Inspector Graham to determine that Candyman539 was Kevin Dale Otterson who lived at 115 N. Fountain St., Apt. 207, in Cape Girardeau, Missouri. The affidavit also described the usual characteristics of child pornography collectors, how computers are usually used with child pornography, and how any seized digital computer equipment would be searched for evidence of child pornography. Based upon the information set out in the affidavit, at 12:37 p.m. on January 11, 2005, Judge Blanton issued a search warrant as sought.

3. On January 12, 2005, at approximately 9:30 a.m., Inspector Graham, Federal Bureau of Investigation Special Agent Thomas Blades, and other law enforcement officers executed the search warrant. They went to the front door of 115 N. Fountain St., Apt. 207, and more than one time knocked and announced, "Police. Otterson, come to the door." Otterson came to the door and opened it, standing there in a shirt but no pants. Inspector Graham told him that they were police and postal inspectors there to execute a search warrant.

4. As the law enforcement officers entered, Graham asked Otterson whether there was anyone else in the apartment. Otterson said,

"No. Only me." Then Graham asked him whether he had any weapons. Otterson said "No." Then Inspector Graham told Otterson to put some pants on. Both then walked to the nearby bedroom where Otterson dressed himself. They then went to the combination kitchen-dining area. There Inspector Graham gave Otterson a copy of the search warrant and told Otterson that they were conducting a child pornography investigation. He further told him that he was not under arrest, that he could leave the apartment at any time, that he would not be arrested that day, and that whether or not he would answer questions would be his choice. Otterson said he would answer their questions. Otterson then answered Inspector Graham's questions and provided information as set out in the Memorandum of Interview, Government Exhibit 2.

5. Also during the interview, Inspector Graham asked Otterson whether he would be willing to let Graham "assume" Otterson's email accounts. Graham told him that he had no search warrant authorizing him to do this and that Otterson had the right not to consent to this. Nevertheless, at 10:30 a.m., Otterson signed and dated a written consent form, thereby authorizing Inspector Graham to assume two identified email accounts belonging to Otterson. The consent form included two email addresses, one with Yahoo and one with Hotmail, and the respective password for each. Gov. Ex. 3.

6. Throughout the interview, the law enforcement personnel and Otterson[1] were friendly with each other. While Inspector Graham interviewed Otterson, other law enforcement officers executed the search warrant and seized items described in the inventory later returned to Judge Blanton. The search ended at 10:30 a.m. At the conclusion of the search, the officers left, without Otterson being arrested. At no time was Otterson's freedom of movement restricted during the execution of the search warrant or during the interview.

7. Later on January 12, Inspector Graham went on the internet and with defendant's passwords reviewed and copied various emails sent

---

[1] On January 12, 2005, Otterson was 41 years of age and had some prior contact with the criminal justice system.

and received by Otterson. The inspector did not obtain any emails from Otterson's computer which had been seized.

## **DISCUSSION**

The motion to suppress should be denied. First, the evidence seized in the execution of the search warrant should not be suppressed. The issue before this court when reviewing the legal sufficiency of the basis for the issuance of a search warrant is whether the issuing judge had a substantial basis for concluding that probable cause existed for the issuance of the warrant. United States v. Luloff, 15 F.3d 763, 768 (8th Cir. 1994); United States v. Martin, 866 F.2d 972, 976 (8th Cir. 1989). Probable cause means a "'fair probability that . . . evidence of a crime will be found in a particular place,' given the circumstances set forth in the affidavit." United States v. Horn, 187 F.3d 781, 785 (8th Cir. 1999) (quoting Illinois v. Gates, 462 U.S. 213, 238 (1983)).

In the case at bar, the affidavit of Inspector Graham provided Judge Blanton with a substantial basis for finding probable cause. This included the first hand information provided by Inspector Petry, acquired by her in her law enforcement status, about the pornographic images of minors seen on defendant's computer monitor in his web camera presentation. Also before Judge Blanton was Inspector Graham's corroborating investigation identifying Candyman539 as the defendant who resided at the 115 N. Fountain St., Apartment 207, residence.

Defendant argues that his Fourth Amendment rights were violated by Inspector Petry's false portrayal of herself on the internet as a minor interested in pornography. The court disagrees. There is no constitutionally protected, reasonable expectation "that a person to whom [defendant] voluntarily confides his wrongdoing will not reveal it," even where the person is surreptitiously a government agent. Hoffa v. United States, 385 U.S. 293, 302-03 (1966).

The email information obtained from defendant's two email accounts, through the use of defendant's two email passwords, should not be suppressed. Regardless of whether defendant had a constitutionally recognized reasonable expectation of privacy in his email messages as they resided in the equipment of Yahoo and Hotmail, cf., United States

v. Bach, 310 F.3d 1063, 1066 (8th Cir. 2002), defendant voluntarily consented to the inspector assuming defendant's authority to open the accounts and read their contents. A warrantless search is authorized by the voluntary consent of someone who has authority over the place to be searched. Illinois v. Rodriguez, 497 U.S. 177, 179, 189 (1990). Whether consent was voluntarily given depends upon the totality of the circumstances. United States v. Heath, 58 F.3d 1271, 1276 (8th Cir.), cert. denied, 516 U.S. 892 (1995). Consent is voluntary if it is the product of an "essentially free and unconstrained choice by its maker." Schneckloth v. Bustamonte, 412 U.S. 218, 225 (1973); United States v. Bradley, 234 F.3d 363, 366 (8th Cir. 2000). In the case at bar, no coercion was used to get defendant to cooperate and to consent to the acquisition of this evidence by the government.

Defendant's statements during the search of his residence should not be suppressed. First, all of his statements were voluntary, because they were not the result of overreaching, such as coercion, deception, or intimidation; his will was not overborne and his ability to decide not to cooperate was not impaired. Colorado v. Connelly, 479 U.S. 157, 169-70 (1986); United State v. Jordan, 150 F.3d 895, 898 (8th Cir. 1998), cert. denied, 526 U.S. 1010 (1999).

The record is clear that defendant was interrogated by the inspector and he was not advised of his rights pursuant to Miranda v. Arizona, 384 U.S. 436 (1966). The issue presented is whether at that time he was "in custody" for Miranda purposes. A person is "in custody" when either formally arrested or restrained in a manner like being arrested. United States v. Goudreau, 854 F.2d 1097, 1098 (8th Cir. 1988) (citing California v. Beheler, 463 U.S. 1121, 1125 (1983) (per curiam)). In United States v. Griffin, 922 F.2d 1343 (8th Cir. 1990), the Eighth Circuit described six relevant factors for determining whether someone is in police custody:

> (1) whether the suspect was informed at the time of questioning that the questioning was voluntary, that the suspect was free to leave or request the officers to do so, or that the suspect was not considered under arrest; (2) whether the suspect possessed unrestrained freedom of movement during questioning; (3) whether the suspect

> initiated contact with authorities or voluntarily acquiesced to official request to respond to questions; (4) whether strong arm tactics or deceptive stratagems were employed during questioning; (5) whether the atmosphere of the questioning was police dominated; [and] (6) whether the suspect was placed under arrest at the termination of the questioning.

922 F.2d at 1349; see also, United States v. Brown, 990 F.2d 397, 399 (8th Cir. 1993).

Relevant to (2) is whether the suspect was handcuffed or otherwise physically restrained during the interrogation. Relevant to (4) is whether a reasonable person would have believed he was under formal arrest or free to go about his business. Relevant to (5) are the length and place of the interview. Brown, 990 F.2d at 400. See also, Stansbury v. California, 511 U.S. 318, 322-25 (1994).

Defendant was not "in custody" when the inspectors interviewed him. At the beginning of the interview he was told that he was not under arrest, that he could leave the apartment at any time, that he would not be arrested that day (and he was not), and that whether or not he answered their questions would be his choice. He voluntarily said he would answer their questions and he did not attempt to leave the apartment. No strong arm tactics were used to get him to cooperate by answering questions. He was not handcuffed during the interview and the execution of the search warrant. Under these circumstances, the undersigned concludes that a reasonable person in defendant's circumstances would not have believed that his freedom of movement was limited to any substantial degree.

Whereupon,

**IT IS HEREBY RECOMMENDED** that the motion of defendant to suppress evidence and statements (Doc. 40) be denied.

The parties are advised they have ten (10) days to file written objections to this Order and Recommendation. The failure to file objections may result in a waiver of the right to appeal issues of fact.

**NOTICE TO SET CASE FOR TRIAL**

This Report and Recommendation having been issued by the undersigned United States Magistrate Judge,

**IT IS HEREBY ORDERED** that, pursuant to the Administrative Order of this Court, the case be set for trial.

/s/ David D. Noce
**DAVID D. NOCE**
**UNITED STATES MAGISTRATE JUDGE**

Signed on September 26, 2005.